NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Justin HOLLAND, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civ. No. 12-07858 |
| v. | MEMORANDUM OPINION |
| NEW JERSEY RESOURCES CORPORATION, Laurence V. DOWNES, Lawrence R. CODEY, Robert B. EVANS, Alfred C. KOEPPE, Sharon C. TAYLOR, Jane M. KENNY, David A. TRICE, Donald L. CORRELL, M. William HOWARD, JR., J. Terry STRANGE, and George R. ZOFFINGER, | |
| Defendants. | |

THOMPSON, U.S.D.J.

The present action comes before the Court on the motion of Defendants New Jersey Resources Corporation and its Board of Directors[1] (collectively, "Defendants") to enforce a settlement agreement with Plaintiff Justin Holland ("Plaintiff"). (Doc. No. 16). Plaintiff opposes. (Doc. No. 19). The Court has reached its decision based upon the written submissions of counsel and the testimony presented at two evidentiary hearings. For the reasons included herein, the Court will deny the motion.

### BACKGROUND

On December 26, 2012, Plaintiff, an NJR shareholder, filed this putative class action against the NJR Defendants. (Doc. No. 1, Compl.). On December 31, 2012, Plaintiff amended

---

[1] Laurence V. Downes, Lawrence R. Codey, Robert B. Evans, Alfred C. Koeppe, Sharon C. Taylor, Jane M. Kenny, David A. Trice, Donald L. Correll, M. William Howard, Jr., J. Terry Strange, and George R. Zoffinger.

1

the Complaint, asserting claims for (1) breach of fiduciary duty; and (2) violations of Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder. (Doc. No. 6, Amd. Compl., ¶ 1). The claims were based upon allegations that NJR's Schedule 14A Proxy Statement ("2013 Proxy Statement") contained materially false and misleading statements with respect to certain disclosures concerning section 162(m) of the Internal Revenue Code ("§ 162(m)"), and the tax deductibility of executive compensation in excess of $1 million. (Amd. Compl., ¶¶ 7, 9). Specifically, Plaintiff alleged that the 2013 Proxy Statement implied that NJR *could* take a tax deduction for certain executive compensation in excess of $1 million, (Amd. Compl., ¶¶ 4-7), despite the fact that such deduction was precluded by the company's failure to secure re-approval of a 2007 Compensation Plan as a prerequisite to deductibility. (Amd. Compl., ¶ 7).

Concurrent with the filing of the Amended Complaint, Plaintiff filed a motion for a preliminary injunction, seeking to enjoin the 2013 Annual Shareholders Meeting until Defendants cured the omissions and false/misleading statements. (Doc. No. 7). Toward that end, Plaintiff demanded Defendants either provide additional disclosures regarding the relevant executive compensation, or, alternatively, add a proposal to the meeting's agenda regarding re-approval of the 2007 Compensation Plan. (Doc. No. 7 at ¶ 9).

On January 9, 2013, the Court received a letter ("the January 9 Letter") from Plaintiff indicating that the parties had reached "an agreement in principle to settle the litigation," and that the preliminary injunction motion should be withdrawn. (Doc. No. 12, Letter of Daniel Adler). On the morning of January 10, however, the Court received an additional letter ("the January 10 Letter") from Plaintiff, indicating that an agreement in principle between the parties had *not*, in fact, been reached. (Doc. No. 13, January 10 Letter). The letter stated in relevant part that:

> after numerous discussions with counsel for Defendants, we had agreed to withdraw our motion for a preliminary injunction based upon their representations and our understanding of the tentative relief that Defendants were willing to provide, contingent upon Plaintiff's review and approval of a draft supplemental proxy statement that Defendants intended to file with the U.S. Securities and Exchange Commission. At the time we anticipated that we would promptly reach final agreement to settle the entire litigation.
>
> Upon review of the draft, we concluded that certain representations made to us by Defendants' counsel, upon which we agreed to withdraw the preliminary injunction motion (and tentatively resolve the case), were untrue . . . . Suffice it to say that the events that have transpired since last evening have changed our understanding of the scope of this litigation and the nature of the relief necessary to resolve it.

(Doc. No. 13, January 10 Letter). Plaintiff's counsel later provided certifications and testimony to the effect that the previous January 9 Letter was a mistaken submission. (*See, e.g.*, Doc. No. 19, Att. 8, Cert. of Daniel Adler; Doc. No. 19, Cert. of Scott Holleman, ¶¶ 47-59). According to Plaintiff's counsel, a paralegal and an associate both drafted versions of the January 9 Letter after speaking with the attorney conducting the negotiations for Plaintiff, Scott Holleman. (*Id.*). In the paralegal's version of the letter, the parties had reached "a settlement in principle," whereas in the associate's letter, the parties had not. (*Id.*). The version of the paralegal was then mistakenly edited and submitted. (*See, e.g.*, Doc. No. 19, Att. 8, Cert. of Daniel Adler).

Counsel for Defendants responded in writing on January 11, expressing disagreement with the assertions in the January 10 Letter that no settlement had been reached and that the representations on which the negotiations had been based were untrue. (Doc. No. 15). Subsequently, Defendants filed the currently pending motion to enforce settlement, (Doc. No. 16), and Plaintiff's opposition followed, (Doc. No. 19).

## DISCUSSION

1. **Legal Standard**

    "Construction and enforcement of settlement agreements is governed by state law."

3

*Muhammad v. Dept. of Corrections*, Civ. Nos. 05-4999, 05-5001, 2012 WL 1393052, at *2 (D.N.J. Apr. 20, 2012) (citing *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348-49 (D.N.J. 1996)). In New Jersey, a settlement is a "contract like any other contract," *id.* (quoting *Peskin v. Peskin*, 271 N.J. Super. 261, 683 (App. Div. 1994)), and should be honored and enforced absent "a demonstration of fraud or other compelling circumstances." *Lawn Doctor, Inc. v. Rizzo*, Civ. No. 12-1430, 2012 WL 6156228, at *6 (D.N.J. Dec. 11, 2012) (quoting *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (internal quotations omitted)). Like a contract, a settlement must have "the basic contract formation elements of offer and acceptance of sufficiently definite essential terms . . . in other words, mutual asset to the same terms." *LNT Merchandising Co. v. Dyson, Inc.*, Civ. No. 08-2883, 2009 WL 2169236, at *2 (D.N.J. Jul. 21, 2009).

New Jersey has a "strong public policy favoring settlements," *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990), such that courts "strain to give effect to the terms of a settlement wherever possible," *Dep't of Pub. Advocate v. N.J. Bd. Of Pub. Utils.*, 206 N.J. Super. 523, 527-28 (App. Div. 1985). As such, oral settlements are binding, even when the parties "contemplate the later execution of a formal document to memorialize their undertaking." *U.S. v. Lightman*, 988 F. Supp. 448, 459 (D.N.J. 1997). The party seeking to enforce the settlement has the initial burden of proving its existence. *See Lightman*, 988 F. Supp. at 458.

Where, as here, the Defendants seek the Court's enforcement of an unwritten and unexecuted agreement, "the [C]ourt must base its decision upon whether the parties manifested an intent to be bound." *Lightman*, 448 F. Supp. at 460. "Where the issue of the intent of the parties is sharply contradicted, the credible evidence – such as the documents and the conduct of the parties – and permissible inferences therefrom are sufficient to justify the factual finding of

the trial judge." *Lightman*, 448 F. Supp. at 460. "The undertaking of performance by one party, concurred in by the other party, is strong evidence of an intention to be bound to an oral agreement." *Id.*

### 2. Analysis

Upon review of the papers and testimony, the Court regrets that there is simply not enough evidence to enforce the purported settlement. In reaching this decision, the Court is conscious both of the policy in this state of favoring settlements, and the extremely reasonable and fair terms that were allegedly negotiated here. Moreover, the Court notes that counsel for Plaintiff has, at no time, expressed what additional relief might be owed to the putative class upon further discovery, but has merely protested the amount of attorneys' fees – a generous $135,000 for what appears to be less than a month's worth of work. Finally, the Court wishes to emphasize that this decision is not meant to hinder the finding of valid oral settlement agreements between parties, or to encourage plaintiffs' attorneys to simply negate the existence of a settlement agreement simply because they regret the fee amount agreed upon.

However, despite the above concerns, circumstances in this case have aligned such that Defendants cannot carry their burden of proof in demonstrating that Plaintiff, via counsel, manifested an intent to be bound. What appears clear from the record is that Plaintiff issued a demand letter and negotiated an award of $135,000 in attorney's fees. (Doc. No. 16, Att. 1, Cert. of Kevin Marino, ¶ 5; Doc. No. 19, Att. 1, Cert. of Scott Holleman, ¶¶ 24-25, 39). Counsel for Defendants then presented a version of Plaintiff's demand and the fee proposal to the Board. (Doc. No. 16, Att. 1, Cert. of Kevin Marino, ¶¶ 5-6; Doc. No. 19, Att. 1, Cert. of Scott Holleman, ¶ 40). The Board then approved these to the extent that the proposed changes to the proxy statement would be made and the attorney's fees paid. (Doc. No. 16, Cert. of Kevin Marino, ¶ 6;

Doc. No. 19, Cert. of Scott Holleman, ¶ 40).  However, the Board, from the evidence, appears to have reached no agreement as concerns the matter of discovery (a provision indicated to be material in the demand letter), and also appears to have demanded the broadest possible relief and/or demanded that the settlement would not be publicized.  (Doc. No. 16, Cert. of Kevin Marino, ¶ 5; Doc. No. 19, Cert. of Scott Holleman, ¶ 40). [2]

As these additions/omissions on the morning of January 9 essentially constituted a counteroffer, the Court looks to whether or not there is sufficient evidence that Plaintiff manifested an intent to be bound to its terms.  Unfortunately, the only witnesses willing to testify or certify that such an intention was expressed were those provided by and in the employ of Defendants.  Plaintiff's counsel denies any such manifest intent to settle, and the various emails and exchanges with Plaintiff's counsel following the morning of January 9 fail to sufficiently confirm any such alleged intention.[3]  As such, despite the personal integrity of the particular witnesses at issue, the Court is reluctant from a precedential perspective to base the finding of a settlement off of one-sided testimony alone.

---

[2] The Court notes that the evidence reveals that Defendants did agree to *entertain* discovery requests, while stopping short of agreeing that such requests would be honored.  (Trans. Holleman Test. 19:9-14).

[3] Despite reaching this conclusion, the Court notes several details in the submissions of counsel that suggest that Plaintiff's counsel did, in fact, manifest intent to be bound.  For example, in the January 10 Letter to the Court, stating that there was no settlement in principle, Plaintiff's counsel wrote: "we concluded that certain representations made to us by Defendants' counsel, upon which we agreed to withdraw the preliminary injunction motion (*and tentatively resolve the case*), were untrue." (Doc. No. 13, January 10 Letter) (emphasis added).  This language could plausibly be read as indicating that Plaintiff's counsel wished to nullify the alleged settlement in principle based upon the purported misrepresentations Defendants' counsel – a reading not in line with the argument that no settlement in principle had ever been reached.  Moreover, regardless of who was supposed to draft the initial January 9 Letter to the Court, the fact remains that a paralegal concluded after speaking to Plaintiff's negotiating attorney that a settlement in principle had been reached and should be included in a letter to the Court.  At the very least, the paralegal's conclusion is a testament to the ambiguous nature of the language and discussions up until that point, and at most, is an indication that Mr. Holleman was indeed manifesting an intent to be bound.

6

The Court is equally frustrated in its attempts to accurately divine from the parties' subsequent conduct that a settlement was intended.  Returning to the facts, Defendants forwarded to Plaintiff's counsel the edited proxy statement and disclosures for review and approval.  (Doc. No. 16, Cert. of Kevin Marino, ¶ 7).  After reading through the materials, Plaintiff's counsel agreed to withdraw the injunction, but indicated a desire to continue negotiating the amount of attorney's fees.  (Doc. No. 19, Att. 6, Jan. 9, 2013 Email from Scott Holleman to Kevin Marino).  Thus, although Plaintiff's counsel agreed to execute part of the performance that was seemingly required by the purported settlement, the agreement was accompanied by a rejection of the idea that such performance was part of any settlement.  Likewise, Defendants' provision at the 2013 Annual Meeting of the additional disclosures and the placement on the agenda of the 2007 Compensation Plan reapproval occurred after counsel for Plaintiff expressly indicated that there was no settlement.

Thus, despite the fact that this is the type of litigation that should be concluded as quickly as possible for the benefit of both the clients and the broader reputation of the legal profession, the Court cannot enforce a settlement in this instance.

## CONCLUSION

For the foregoing reasons, Defendant's motion to enforce the settlement agreement, (Doc. No. 16), is denied.  An appropriate Order accompanies this Opinion.

/s/Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

Dated:     June 27, 2013

7